**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

v.                                                                    **CASE NO.  3:08CR27-LAC**

**ROBERT L. IGNASIAK**

**UNITED STATES' RESPONSE TO DEFENDANT'S CONSOLIDATED
OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT
AND REQUEST FOR A DOWNWARD DEPARTURE**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby responds to the defendant's Presentence Investigation Report (PSIR) and Request for Downward Departure.

**I.     PSIR Objections**

**A.  Introduction**

The defendant has filed a number of objections to the PSIR, as identified by paragraph. number.  The objections are nearly all fact-based objections and any resolution of such is dependent upon the facts adduced at trial.  Many of the objections are merely reiterations of unsuccessful trial arguments.  None of the objections appear to impact the sentencing guidelines calculations and therefore do not require a court ruling.  However, in the government's view, the facts to which the defendant has objected are an accurate

reflection of the facts adduced at trial (unless otherwise specified herein) and are important in establishing the serious nature of the defendant's crimes.

Therefore, while an individual objection, may, standing alone, appear insignificant, the United States will nevertheless respond in opposition to all of the defendant' objections, to correct or clarify for the record.

The Government notes that, because the trial has not been transcribed as yet, the United States must necessarily respond to the factual objections based upon the collective memories of the government's trial participants.

### B.  Specific Objections

### ¶26

The PSIR includes Florida Statute citation F.S. 458.326, and accurately summarizes its content.  The statute is cited in the Indictment in this case (Para. A.2.) and is properly included in the PSIR.  The relevance of the statute and its applicability to this case has been argued extensively both pre-trial and during the course of the trial, in the context of trial evidence and jury instructions.  The United States relies on all of its previous arguments on this point.

Notwithstanding the statute's accuracy, the United States does not object to its removal from the PSIR.

### ¶27

The PSIR includes Florida Statute citation F.S. 458.331(q),  and accurately summarizes its content.  The statute is properly included in the PSIR.  Further, the PSIR

does not state that this provision is criminal in nature, as implied by the defendant's objection. The relevance of the statute and its applicability to this case has been argued extensively both pre-trial and during the course of the trial, in the context of trial evidence and jury instructions. The United States relies on all of its previous arguments on this point.

Notwithstanding the statute's accuracy, the United States does not object to its removal from the PSIR.

### ¶28

The PSIR correctly characterizes the trial evidence and the determination necessarily made by the jury in this case. The United States proved that the defendant indeed prescribed controlled substances (1) without determining a sufficient medical necessity and (2) outside the usual scope of professional practice, as stated in the PSIR. Extensive trial testimony throughout the month-long trial showed that the defendant had actual and constructive knowledge of the harm caused to his patients by his prescribing, and even that death resulted in some cases. The evidence is summarized in Paragraphs 30-80, and collectively proves the accuracy of the summary contained in this paragraph.

The defendant cites three more specific bases for his objection. First, he argues that, because some of his patients had actual illness or injury, it must be concluded that he *determined* the medical necessity of his "treatment." This conclusion is illogical. Simply because his patients may have had actual medical problems does not necessarily mean that the defendant properly determined what those problems were or what the

proper treatment would be. Indeed, the defendant's own medical charts, with their "straight-line examinations" and inaccuracies, show that the defendant's determination of medical necessity was wholly inadequate. Further, testimony from patients and families clearly showed that the defendant was not much interested in curing whatever underlying problems the patients had, but instead to over-medicate. In some instances, i.e. Beverly Price, no medical determination or diagnosis was even attempted. Therefore, the evidence supports the factual recitation in the PSIR.

Second, the defendant states it to be inaccurate to state that the defendant caused patients to abuse or misuse their medication, and cites to *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) and other cases[1] for the proposition that experts must testify as to "causation." The point is meaningless for purposes of sentencing. However, trial evidence proved this statement to be accurate. Many of the defendant's patients did not begin their treatment as drug addicts. They simply trusted their doctor and took the prescribed medication and, as a result, became addicted. A prime example is Nadean Burke, who became morphine-addicted and eventually brain damaged (as per the testimony of Dr. Timothy Walker) solely because of the defendant's criminal prescribing patterns.

*United States v. Frazier* does not hold otherwise, and in fact does not address the "causation" issue raised by the defendant. The court merely reiterated the requirements

---

[1] *Frazier* is the only criminal case cited by the defendant in support of this point of law.

set forth in *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993) and held that the sexual battery defendant's expert was properly excluded due to lack of specificity as to his opinion.

Third, the defendant argues that the PSIR should include information about the actual physical ailments of the addicted patients to whom he knowingly prescribed more addictive controlled substances. Again, the point is irrelevant since the jury found the defendant to have illegally prescribed the substances. regardless of his "duty" to relieve suffering. The defendant did not reduce suffering, he caused it.

Fourth, the defendant states that the Probation Officer held the defendant "legally responsible for the improper and in some cases illegal conduct of patients..." (Defendant's objections, p. 7). This interpretation of the content of the PSIR appears to be overly broad and poorly interpretive. The PSIR does not so state; it merely reiterates in summary the allegations as alleged in the Indictment and found by the jury.

Here, as in other parts of the defendant's pleading, he blames the patients for their behavior and diverts attention from his own criminal conduct. Certainly, the defendant had a large patient base consisting of drug-addicted seekers with no or little medical justification for requesting controlled substances, and certainly they are accountable for their own behavior. However, the defendant, a trained physician, also had responsibility to identify drug seekers and refuse to participate in their self-destructive behavior. The evidence presented at trial was replete with warning signs as well as direct information

about his patient's behavior.  At that point, he became a free and willing participant in his patient's behavior.

¶¶ 29-31, 33

The PSIR includes an accurate count of medication prescribed.  This information was introduced at trial in bulk, in the form of original prescriptions, and in summary, in the form of the NDIC (National Drug Intelligence Center) analysis.  The information is accurate, part of the record of this case, and properly included in the PSIR.  The defendant's argument merely goes to an interpretation of the evidence, and he is free to argue as to quantities if he so chooses, but the information is properly included in the PSIR.

¶32

The PSIR includes information, introduced at trial, as to locations from which the defendant's patients traveled to be treated.  The Government's exhibit number (#594) is identified.  The information is accurate as stated and properly included in the PSIR.  The defendant's characterization of this information as an allegation by the Probation Officer of "doctor-shopping" is inappropriate.  The PSIR merely identifies the information as "evidence" of such behavior, which is accurate.  Trial evidence showed that many of the defendant's patients traveled long distances, and passed many qualified medical practitioners, to be treated by the defendant.  This is equally true of a large portion of the Florida patients.

Further, the patients representing these numbers are not "unknown" but are in fact identified by the underlying NDIC analysis.

¶34

The PSIR accurately identifies information about the Walton County Sheriff's Office and the information it gathered during the time the defendant practiced in Walton County. The United States is prepared to prove the allegations as stated in paragraph 34, if necessary; the court is not restricted at sentencing to facts proven at trial or admitted by the defendant. *United States v. Thomas*, 446 F3d 1348 (11th Cir. 2006). However, since none of the allegations, except the first and last sentences, were proved at trial, the United States does not object to their removal from the PSIR.

¶36

Paragraph 36 contains a summary of trial evidence regarding patient deaths. The evidence was the subject of litigation and properly allowed by the Court. Two of the patients, Marsha Brown and Beverly Easterly, were charged in the indictment; the jury found that death resulted from the defendant's prescriptions (Counts 28 and 48). The United States was permitted to introduce evidence of the additional deaths as evidence of notice to the defendant that his prescribing was resulting in harm to his patients. Therefore, the information as to each of the deaths is part of the record and properly included in the PSIR.

The defendant's patient-by-patient analysis is merely a reiteration of his expert witness testimony, obviously rejected by the jury. Certainly, the court may consider the evidence as it deems appropriate for sentencing purposes.

¶¶37-38

The PSIR includes an accurate summary of the Drug Utilization Review (DUR) letters and other evidence introduced at trial as evidence of notice to the defendant of problems with his controlled substances prescription. Because they were introduced as notice, the United States was under no obligation to prove their truth.

¶39

In paragraph 39, the PSIR accurately summarizes the peer review process and the testimony at trial. The defendant's characterization of Kelly Rubin's information is hearsay is curious, given that she testified to her own role in the peer review process.

The defendant's allegation that he failed to respond to Dr. Walker on advice of counsel was not proven at trial, and does not detract from the otherwise accurate factual statements in the PSIR.

¶40

The PSIR accurately recounts the testimony of Mary Cosner and Dr. Marholin, and is thus properly included. The defendant's allegation that Dr. Marholin sent a letter to HCA was not proven at trial and is not relevant to the PSIR.

¶41

The United States disagrees that the paragraph is irrelevant, in that it explains how investigators obtained the medical files, and why investigators did not obtain the defendant's financial files. The information was introduced into evidence through the testimony of Mary Cosner and FBI Special Agent Victoria Harker.

¶44

The PSIR does not state that the defendant did not see all of his patients. The United States agrees that the defendant likely did see all of his patients.

¶46

The undersigned does not recall whether Ms. Cosner testified that she took calls as described in the fifth sentence of paragraph 46. The sentence is accurate, but the United States does not object to its removal from the PSIR.

¶47

The PSIR includes information about a threat made to Dr. Marholin, about which he was allowed only limited testimony at trial. The United States does not object to the removal of the eighth sentence (which reads, "*Also, he said a local radio personality on 99 Rock made a threat over the air that he should leave town.*")

¶48

The PSIR includes a statement of the relevant testimony of Kelly Rubin. The testimony, and consequently the PSIR paragraph, was relevant to show, *inter alia,* notice

to the defendant, a pattern of illegal prescriptions, and the reason for the defendant's abrupt retirement from medicine. The statement is properly included in the PSIR.

¶49

The PSIR recounts frightening episodes which occurred as a direct result of the defendant's illegal behavior. The defendant created addicts and, consequently, set up the scenarios recounted by Doctors Marholin and Staviski. The information is relevant and properly included in the PSIR.

¶50

The "doctor-shopping" incidents have been addressed *supra*. The fact that the defendant was on notice that some of his patients were doctor-shopping but continued to prescribe dangerous controlled substances is a fact at the heart of the defendant's criminal behavior and the Government's case. The information is therefore relevant and properly included in the PSIR. The United States agrees that Ms. Hudson did not testify as to any of her observations as the defendant's employee. Therefore, the part of paragraph 50 beginning, "She stated that in the 1980s..." through "would come in monthly to obtain prescriptions...." can be stricken.

¶¶51-52

The PSIR accurately describes Nadean Burke's relevant testimony and therefore is properly included in the PSIR. The evidence adduced at trial does not support the defendant's allegations that Dr. Marholin "suddenly refused to prescribe controlled substances..," and that Dr. Monk caused Nadean Burke's physical problems. Dr. Walker

specifically testified that it was the defendant's morphine prescriptions that caused Ms. Burke's brain damage. Thus, this information is properly included in the PSIR.

¶53

The information contained in paragraph 53 of the PSIR is an accurate recount of Dr. Walker's testimony and is properly included.

¶54

The PSIR properly recounts Dr. Monk's testimony. She testified fully as to her interactions with Dr. Marholin and with the defendant's former patients. The court can consider for sentencing purposes Dr. Monk's reasons for continuing some patients on pain medications at reduced dosages.

¶55

The PSIR properly recounts the testimony of family members, all of which was properly admitted to prove knowledge and intent, and is therefore appropriately included in the PSIR.

¶57

At trial, the court did not permit Beverly Price (formerly Pittman) to testify that she heard that for $50 cash, she could get whatever she wanted from the defendant. The statement, though true and provable at sentencing, can be removed from the PSIR without Government objection.

¶¶58-59

The PSIR properly recounts the testimony of Beverly Easterly's surviving family members. The testimony proved, and the jury found, that Easterly's death resulted from the defendant's prescriptions, as charged in the Indictment.

¶60

The Court can take account of the testimony and credibility of Dr. Fowler as the court finds appropriate for sentencing purposes.

¶61

The PSIR accurately recounts Dr. Cumberland's testimony. The testimony proved, and the jury found, that Brown's death resulted from the defendant's prescriptions, as charged in the Indictment.

¶62

The PSIR accurately recounts the testimony of Dr. Bruce Goldberger. The court is free to consider the testimony regarding post-mortem redistribution as the court finds appropriate.

¶63

The PSIR accurately recounts the testimony of Paul Doering. The court is free to take account of the testimony and credibility of Leonard Rappa as the court finds appropriate.

## ¶65, 67-68, 73-76, 79-80

The PSIR accurately recounts the testimony of Dr. Arthur Jordan.  The testimony regarding the defendant's record-keeping was designed not to determine whether the defendant's medical files comported with Florida law, but to show inconsistencies, inadequate examinations to justify his prescriptions, and notification of the harmful nature of his prescribing patterns.

Dr. Jordan's testimony was properly admitted regardless of the defendant's status as a "general practitioner."  In fact, the fact that the defendant was not a pain management specialist makes the volume of his controlled substance prescriptions all the more egregious.

The defendant's third point, that Dr. Jordan held the defendant to a higher standard than did Florida law, is not a fair characterization of the trial testimony.  Dr. Jordan testified about situations in which patients are receiving high volumes of narcotics, and/or when a doctor suspects abuse.  The defendant had available to him ways to determine whether his prescribing was harming his patients, but chose not to take those steps.  This fact as proven at trial is evidence of the defendant's knowledge and intent.

## ¶78

The United States agrees that standards in other states are irrelevant, and such information was not elicited at trial.

¶80

The PSIR properly includes information presented by Dr. Jordan about specific patients. The defendant's objection is merely argument rejected during the trial process.

¶82-89

The United States believes that the individual patients and families identified in the PSIR are victims of the defendant's and have a right to be heard. According to statute, a "victim" is a person:

> directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

Title 18, United States Code, Section 3663A(a)(2). People who have suffered physical harm or pecuniary loss from fraud crimes are included in the mandatory restitution provisions. 18 U.S.C. § 3663A(c)(1). Those individuals identified in the PSIR as victims were all harmed, as defined by statute.

The insurance carriers certainly are entitled to restitution for money owed from claims. A court is not required to find with specificity the amount of loss or restitution. In this case, the trial testimony established an extremely high percentage of the defendant's patients on controlled substances, and when the controlled substances stopped flowing, the patient base dwindled to nearly zero. A random sampling of files done by Dr. Jordan illustrated the pervasive nature of the illegal narcotics dispensing. Evidence from employees and witnesses corroborated Dr. Jordan and Dr. Marholin.

Therefore, the court may fairly glean from the evidence that the victim insurance companies are due a full refund of the payments made during the relevant time period.

¶142

The Marshals Service obtained an appraisal of the medical clinic in November 2008. The appraisal valued the property at $580,000.

## II.     Downward Departure

The defendant requests that this court grant a "significant" downward departure from the recommended sentencing guidelines range. The United States disagrees that any provision in the sentencing guidelines, including the "victim misconduct" provision, justifies a departure.

Although the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005) rendered the sentencing guidelines advisory, it did not remove the court's obligation to calculate the applicable guidelines range correctly and consider it in sentencing. *United States v. Devegter*, 439 F.3d 1299, 1303 (11th Cir. 2006); *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). After a district court accurately has calculated the guidelines range, it may impose a more severe or more lenient sentence. *Crawford* at 1179; *United States v. Winingear*, 422 F.3d 1241, 1244 (11th Cir. 2005).

Although a within-guidelines range sentence is not *per se* reasonable, the Eleventh Circuit ordinarily expects such a sentence to be reasonable. *United States v. Talley*, 431 F.3d 784, 787-788 (11th Cir. 2005). This expectation is measured against the record and a defendant bears the burden of showing that his sentence is unreasonable in

light of the record and the factors identified in Title 18, United States Code, Section 3553(a). *Id.* Following *Booker*, the Eleventh Circuit reviews a sentence imposed for reasonableness. *Winingear,* 422 F.3d at 1245. The factors set forth in 18 U.S.C. §3553(a) guide the review. *Id.* Those factors include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (4) the need to protect the public; and (5) the sentencing guidelines range. *United States v. McVay*, 447 F.3d 1348 (11th Cir. 2006). The court noted that when imposing a sentence falling far outside of the guidelines range, bsed upon Section 3553(a) factors, "[a]n extraordinary reduction must be supported by extraordinary circumstances." *Id.*, quoting *United States v. Dalton*, 404 F.3d 1029, 1033 (8th Cir. 2005). The Eleventh Circuit also cited with approval the Fourth Circuit decision in *United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006)(when district court imposes sentence substantially outside the guidelines range, "[t]he farther the court diverges from the advisory guideline range, the more compelling the reasons for the departure must be"). *McVay* at 1357.

In this case, the jury held the defendant responsible for two of his patients. Each of those counts carry a minimum mandatory sentence of 20 years, up to life in prison. Previous "doctor" cases tried in this district which involved the deaths of patients have resulted in life sentences. (*United States v. Merrill*, Case No. 5:05cr23-MCR; *United*

16

*States v. Williams*, Case No. 5:03cr59-MCR).  The defendant was convicted of 41 additional counts of fraud and illegal narcotics dispensing.

      Evidence at trial showed a pattern of many years of illegal distribution and fraud.  The defendant was well known, not just in his community but in the Florida panhandle as well.  Because of the defendant, a large segment of the population of his community was using, abusing, and/or addicted to controlled substances.  Many more serious physical afflictions could have been missed because of the pain-masking qualities of narcotics, and the defendant's propensity to treat nearly every complaint with a drug cocktail.  The United States encountered numerous former patients during the investigation and prosecution of this case; many more than could testify at trial.  Many stories of suffering from additions and dependence flowed from Walton County and beyond.

      The secondary effects of the defendant's actions were well known to law enforcement and to the medical communities of the area as well.  As summarized in the PSIR, the Walton County Sheriff's Office dealt with numerous traffic crashes caused by people taking controlled substances and driving, false reports of thefts of controlled substances (a police report was required for a replacement prescription to be written), thefts for money to buy controlled substances, and so on.  The WCSO was well aware for years that the defendant was the primary source for the prescription medications in the community.  Likewise, medical personnel knew of the defendant, and were required to respond to health crises caused by his prescribing patterns.  The local hospital's emergency room personnel were well aware that the defendant's patients, when they

17

showed up at the ER, may well be drug-shopping. The defendant's name on a medical record or a prescription bottle was a "red flag" to the medical community and law enforcement alike - a fact the United States can prove at sentencing.

Thus, the defendant can show no compelling reason for a substantial downward departure. That the defendant in fact administered proper medical techniques to some of his patients, some of the time, does not change this fact. The fact that a defendant does not commit a crime on other occasions is not relevant. The question is not how many times a defendant obeyed the law, but whether or not on the occasions charged a defendant violated it. *United States v. Kreimer*, 609 F.2d 126, 130 (5th Cir. 1980).

      Respectfully submitted,

      THOMAS F. KIRWIN
      United States Attorney


       */s/ Michelle M. Heldmyer*
      Michelle M. Heldmyer
      Assistant U.S. Attorney
      Florida Bar No. 616214
      21 East Garden Street, Suite 400
      Pensacola, Florida 32502
      (850) 444-4000

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via CM/ECF filing to the defendant's counsel of record on this January 26, 2009, to:

Roy Black, Esq.
201 South Biscayne Blvd., Ste. 1300
Miami, FL 33131
Tel: (305) 371-6421
Fax: (305) 358-2006

Jackie Perczek, Esq.
201 South Biscayne Blvd., Ste. 1300
Miami, FL 33131
Tel: (305) 371-6421
Fax: (305) 358-2006

Barry Beroset, Esq.
1622 North 9th Avenue
Pensacola, FL 32503
Tel: (850) 438-3111
Fax: (850) 432-1919

*/s/ Michelle M. Heldmyer*
Michelle M. Heldmyer
Assistant U.S. Attorney