IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:  3:08cr27/LAC/EMT
                                                    3:15cv56/LAC/EMT

                                                    3:13cr95/LAC/EMT
                                                    3:15cv57/LAC/EMT
ROBERT L. IGNASIAK, JR.

_____

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant Robert L. Ignasiak, Jr.'s

"Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a

Person in Federal Custody" and supplemental documents (ECF No. 424, 425).[1]

The Government filed a response (ECF No. 432), and Ignasiak filed a reply (ECF

No. 434).   The case was referred to the undersigned for the issuance of all

preliminary orders and any recommendations to the district court regarding

_____

[1] All post-indictment documents filed in Case 3:13cr95/LAC are identical to those filed in the original criminal case, Case No. 3:08cr27/LAC.   Therefore, for ease of reference, docket references will only be to the docket number(s) in the earlier case.   Any references to documents in other cases will be preceded by the appropriate case number.

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

dispositive matters.    *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).    The undersigned held an evidentiary hearing on November 3, 2017.    After a review of the record and the arguments presented, it is the opinion of the undersigned that Ignasiak's § 2255 motion should be granted in part and that he be afforded a belated appeal.    In light of this conclusion, the remainder of his motion should be denied without prejudice, as explained more fully below.

## PROCEDURAL BACKGROUND

Defendant Robert L. Ignasiak, Jr., a former licensed physician, was indicted on February 19, 2008, in the Northern District of Florida (ECF No. 3).    He was charged with fourteen counts of healthcare fraud (Counts One through Fourteen) and forty counts of illegally prescribing controlled substances (Counts Fifteen through Fifty-Four), two of which charged that death resulted (Counts Twenty-Eight and Forty-Eight) (*id.*).    After a nineteen-day trial in October and November of 2008, at which Ignasiak was represented by Barry Beroset, Roy Black, Jackie Perczek, and Mark Seiden, a jury found him guilty of twelve counts of healthcare fraud and thirty-one counts of illegal prescribing, including Counts Twenty-Eight and Forty-Eight (ECF No. 187).    Ignasiak was found not guilty of the remaining eleven counts (ECF No. 189).    In January 2009, the court sentenced him to a total of 292-months

imprisonment (ECF Nos. 208, 212, 248, 259).   The court also imposed a fine of $1,000,000, that was later reduced to $250,000 (ECF Nos. 259, 267).   Ignasiak appealed the judgment and sentence (*see, e.g.*, ECF No. 210).

In October of 2009, the Government filed, under seal, an "In Camera Notice to the Court" in which it disclosed information it had recently learned about what it characterized as a "kerfuffle" involving its expert witness, Dr. Arthur Jordan, which occurred in 2009 (ECF No. 274).   Ignasiak moved to unseal the notice, and the Government responded (ECF Nos. 276, 280).   The court denied the motion to unseal for the reasons stated in the Government's response (ECF No. 282). Ignasiak appealed (ECF No. 283).

Ignasiak also filed a motion for a new trial based on the newly discovered evidence disclosed in the Government's in camera notice (ECF No. 290).   The court denied the motion after a response from the Government (ECF Nos. 305, 312). Ignasiak appealed this order as well (ECF No. 313).

Ignasiak was represented by Roy Black and G. Richard Strafer in his three consolidated appeals.   He raised multiple claims for relief, and the Eleventh Circuit found that a single claim was dispositive and required reversal.   More specifically, the appellate court held that the district court erred in allowing the introduction of

autopsy reports or handwritten medical notes without requiring testimony by their authors, in violation of the Confrontation Clause and the rules of evidence (ECF No. 330 at 5).[2]    It also found that the sealed information regarding the potential impeachment information regarding Dr. Jordan must be unsealed (ECF No. 330 at 44–49).    Additionally, on April 19, 2012, the Eleventh Circuit granted Ignasiak's motion for release from custody (ECF No. 339), after the district court had denied Ignasiak's request seeking the same (*see* ECF No. 337).[3]

Ignasiak's case was set for re-trial on December 3, 2012 (ECF No. 367).    On November 6, 2012, the court issued a warrant for Ignasiak's arrest after he violated his pretrial release by disappearing from his legal residence (ECF No. 392).    The Presentence Investigation Report ("PSR") reflects that Ignasiak faked his own suicide, absconded from pretrial supervision, and fled the jurisdiction (ECF Nos. 415, PSR ¶ 55).

---

[2] *United States v. Ignasiak*, 667 F.3d 1217 (11th Cir. 2012).

[3] The record contains what appears to be two identical mandates.    ECF No. 338 bears a stamp reflecting that it was issued as a mandate on March 15, 2012, while ECF No. 349 reflects that it was issued as a mandate on June 8, 2012.    This may be because the original judgment in the record contains two sequential copies of the Eleventh Circuit's opinion (*see* ECF No. 330).    In contrast, the docket sheet of the Eleventh Circuit reflects that the mandate issued on April 24, 2012.

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

In September of 2013, Ignasiak was located and arrested in the Southern District of Florida (ECF Nos. 397, 398).   He was returned to this district where he entered a plea of guilty, represented by Clay B. Adkinson (ECF Nos. 407–410). His plea was to all the remanded counts in the 2008 case except the two counts involving deaths, Counts Twenty-Eight and Forty-Eight.   In exchange for the plea the Government agreed to dismiss the two death counts and to not file any charges against any other person for crimes in relation to Ignasiak's failure to appear (ECF No. 408 at 1, 3–4).   Ignasiak also entered a guilty plea as charged in Case No. 3:13cr95, which charged one count of failure to appear for trial on the 2008 case.

After a contested sentencing hearing, the court sentenced Ignasiak to the statutory maximum on all counts, with his sentence on the 2013 failure to appear charge to run consecutively to the sentences on the 2008 counts (ECF Nos. 418, 430).   Ignasiak's total sentence of 360 months was comprised of a 240-month sentence in Case No. 3:08cr27, followed by a 120-month sentence in Case No. 3:13cr95 (ECF No. 430 at 54).[4]   In imposing sentence, the court noted that the same sentence would be imposed, irrespective of its findings as to any of defense counsel's

---

[4] Neither Defendant's attorney, Clay Adkinson, nor the two Assistant United States Attorneys, Karen E. Rhew-Miller and Alicia H. Kim, had participated in Defendant's original trial.

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

objections or arguments (ECF No. 430 at 55).   The court advised Ignasiak that an appeal had to be filed within fourteen days, that he had the right to be represented by an attorney on appeal, and that if Ignasiak could not afford counsel, an attorney would be appointed for the purposes of an appeal "upon [his] petition to the Court" (ECF No. 430 at 58).

In the present motion, Ignasiak raises three grounds for relief (ECF No. 424). He contends that his guilty plea was involuntary, that counsel failed to file a notice of appeal as requested, and that counsel failed to preserve the district court's alleged error in its drug quantity calculation for appellate review.   The Government opposes the motion in its entirety.

## ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

subject to collateral attack.     *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.     *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).     In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.     *Strickland v. Washington*, 466 U.S. 668, 686 (1984).     Because the court finds merit in Ignasiak's claim that his attorney was constitutionally ineffective because he either failed to file, or failed to consult with Ignasiak about, an appeal, this is the only claim that will be discussed herein.     *See McIver v. United States*, 307 F.3d 1327, 1331 n.2 (11th Cir. 2002) (collateral claims should not be entertained while a direct appeal (here, a belated apppal) is pending).

Failure to File an Appeal

In Ground Two of Ignasiak's motion he claims that counsel failed to file a notice of appeal upon his specific request that counsel do so.   He further asserts in his supporting memorandum that his counsel, Mr. Adkinson, assured him that he would file an appeal, but he did not do so, and also that Adkinson did not make any effort to consult with him about the advantages and disadvantages of appealing. The Government opposes the motion, arguing that there is "no credible evidence" that Ignasiak asked his counsel to file an appeal (ECF No. 432 at 11).   In light of the conflicting factual positions of the parties, the court held an evidentiary hearing on this claim.[5]

<u>Applicable Law Regarding Counsel's Duties with Respect to an Appeal</u>

- ▪ <u>Specific Request</u>

If a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable.   *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Rodriguez v. United States*, 395 U.S. 327 (1969); *Peguero v. United States*, 526 U.S. 23, 28

---

[5] The scope of the hearing was later expanded to include Ignasiak's claim that his plea was involuntary, as raised in Ground One of his motion.   In light of the court's findings with respect to the instant claim, the court offers no analysis of this or Ignasiak's other ground for relief, as previously noted.

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

(1999)).    Because a defendant whose lawyer fails to file an appeal upon request has

been denied an entire judicial proceeding, prejudice is presumed and the defendant

is entitled to a belated appeal.    *Id.*; *Gomez-Diaz v. United States*, 433 F.3d 788, 792

(11th Cir. 2005).

> ▪ <u>Consultation</u>

In cases where a defendant neither instructs counsel to file an appeal nor asks

that an appeal not be taken, the question whether counsel has performed deficiently

by not filing a notice of appeal is analyzed as follows:

> [T]he question . . . is best answered by first asking a separate, but
> antecedent, question: whether counsel in fact consulted with the
> defendant about an appeal.    We employ the term "consult" to convey
> a specific meaning — advising the defendant about the advantages and
> disadvantages of taking an appeal, and making a reasonable effort to
> discover the defendant's wishes.    If counsel has consulted with the
> defendant, the question of deficient performance is easily answered;
> Counsel performs in a professionally unreasonable manner only by
> failing to follow the defendant's express instructions with respect to an
> appeal.    *See supra* 1034–1035.    If counsel has not consulted with the
> defendant, the court must in turn ask a second, and subsidiary, question:
> whether counsel's failure to consult with the defendant itself constitutes
> deficient performance.

*Flores-Ortega,* 528 U.S. at 478; *see also Thompson v. United States*, 504 F.3d 1203,

1207 (11th Cir. 2007).    The *Flores-Ortega* Court rejected a bright-line rule that

counsel must always consult with a defendant regarding an appeal:

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

> We instead hold that counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.   In making this determination, courts must take into account all the information counsel knew or should have known . . . .   Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.

*Id.,* 528 U.S. at 480; *see also Devine v. United States*, 520 F.3d 1286 (11th Cir. 2008) (finding counsel had no affirmative duty to consult with defendant about an appeal where defendant was sentenced at the bottom of the Sentencing Guidelines range after pleading guilty and waiving right to appeal); *Thompson,* 504 F.3d at 1208 (11th Cir. 2007) (defendant dissatisfied with perceived disparate sentence met burden of showing he would have wanted to appeal); *Otero v. United States*, 499 F.3d 1267 (11th Cir. 2007) (defendant who received sentence at low end of predicted guidelines range and had not expressed desire to appeal failed to show prejudice).

In cases where a defendant has not specifically instructed his counsel to file a notice of appeal, a *per se* prejudice rule does not apply, rather, a defendant must demonstrate a reasonable probability exists that, but for counsel's deficient performance, he would have timely appealed.   *Flores-Ortega*, 528 U.S. at 484, 486;

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

*Thompson,* 504 F.3d at 1207.    "Evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination."    *Flores-Ortega*, 528 U.S. at 485.    However, "[b]ecause a direct appeal of a federal conviction is a matter of right, *see Rodriquez v. United States*, 395 U.S. 327, 329–30 (1969), we determine whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an appeal."    *Thompson*, 504 F.3d at 1208 (citing *Flores-Ortega*, 528 U.S. at 485–86; *Gomez-Diaz*, 433 F.3d at 793).

In *Thompson*, in reviewing a claim that counsel had failed to consult with the defendant about his appeal, the district court found "[c]onsulting with [Thompson] for less than five minutes about his right to appeal does not equate to a failure to consult."    504 F.3d at 1207.    On appeal, the Eleventh Circuit stated that the question of what equates to adequate consultation, however, is not one of duration, but of content.    *Id.*    It found that the content of the exchange in that case did not constitute adequate consultation because no information was provided to the defendant from which he could have intelligently and knowingly either asserted or waived his right to an appeal, and the record was clear that no reasonable effort was

made to discover defendant's informed wishes regarding an appeal.  *Id.*  Under these circumstances, the court found that any waiver by the defendant of his right to appeal was not knowing and voluntary.  *Thompson,* 504 F.3d at 1207.

In *Otero v. United States*, 499 F.3d 1267, 1270–71 (11th Cir. 2007), the court found that counsel had not consulted with his client, when all discussions took place prior to sentencing.  However, it found that no rational defendant in Otero's position would have sought to appeal in light of the broad appeal waiver, and because Otero did not communicate to his lawyer a desire to appeal, it concluded that counsel was not under a constitutional obligation to consult with his client about an appeal.

<u>The Written Record</u>

Ignasiak stated in an affidavit filed along with his § 2255 motion that following his sentencing on January 14, 2014, he told his attorney that he definitely wanted to appeal his conviction (ECF No. 424 at 48 (Exh. D, ¶ 3)).   Ignasiak identifies two possible appellate issues: (1) the Government failed to state a medical standard by which his conduct could be measured, and (2) the calculation of the drug amount was based on an erroneous conversion of uncharged drugs (ECF No. 424 at 31 n.6).   He also argues that his statements to the court at sentencing evidenced an interest in appealing (*see* ECF No. 430 at 40–47).   Ignasiak further avers that he

attempted to retain an attorney through his family after he was "abandoned by defense counsel," and that Adkinson "convinced Dr. Ignasiak's daughter and sister not to assist with his efforts to appeal the conviction" (ECF No. 424 at 32, 34, 46 (Exh. C), 48 (Exh. D, ¶ 3)).   Neal R. Lewis, an attorney whom Ignasiak contacted about pursuing his appellate remedies, flatly told Ignasiak that he could not tell Ignasiak's family that they would not be prosecuted, and noted that Ignasiak's daughter and sister were unwilling to proceed with any payment due to their concerns about being prosecuted (ECF No. 424 at 46 (Exh. C)).

The Government submitted Adkinson's affidavit in conjunction with its response.   The Government claims that counsel's affidavit describes the multiple discussions counsel had with Ignasiak about his appellate options "with specificity as to timing and content" (ECF No. 432 at 11).   This specificity reveals a stark contrast between the quantity and depth of conversations about various appeals <u>before</u> the judgment in this case, and what occurred afterward.   Counsel stated, for instance, that he and his client fully discussed appellate options before sentencing, and counsel "explained that until the sentence was imposed; the arguments of the government presented; the pronouncement and reasons for sentence set forth by the Court; as well as the exact nature and structure of that sentence, along with all

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

matters relating to the PSR being known, that it was impossible to know what if any

appellate issues may or may not exist" (ECF No. 432-1 at 2).    Therefore, no

decision was made regarding an appeal at that point (ECF No. 432-1 at 2).    Counsel

went on to aver:

> Following the imposition of sentence, Counsel for the Defendant recalls
> only one communication in which the Defendant addressed filing an
> appeal.    The context of this communication, however, was not to
> request Counsel to file an appeal, but rather a mention in passing by the
> Defendant that his belief that an appeal would not do any good given
> the Court's actual sentence imposed and his belief in an inherent
> unfairness in the judicial system.

(ECF No. 432-1 at 2).    Counsel stated that throughout the process, Ignasiak

repeatedly vocalized his belief that the system was not fair and that an appeal would

not do any good because all he would get would be another trial (ECF No. 432-1 at

2).    Nonetheless, Adkinson never stated that he consulted with Ignasiak after

sentencing about any appellate issues that may have existed and whether to file an

appeal.    Furthermore, as to Ignasiak's allegation that he specifically requested that

counsel file an appeal, Adkinson merely states that he "does not recall the Defendant

ever instructing him to file an appeal" (ECF No. 432-1 at 1).

In his reply, Ignasiak contrasts his recollection with counsel's statement that

he did not recall a request that he file an appeal.    He argues that there was an

abundant basis to believe he would have wanted to file an appeal and notes that the Eleventh Circuit characterized the Government's evidence as "less than overwhelming" in its opinion in his first appeal. *United States v. Ignasiak*, 667 F.3d 1217, 1220 (11th Cir. 2012).

<u>The Evidentiary Hearing</u>

Attorney Ron Johnson was appointed to represent Ignasiak for purposes of the evidentiary hearing and related matters. The hearing testimony with respect to Ignasiak's appeal was substantially similar to that already in the written record.[6]

Ignasiak testified that he did not directly tell his lawyer that he was unhappy with the sentence, but he stated that he told counsel that he wanted to appeal. Ignasiak recalled that he advised his counsel of such in a "little consultation room" after sentencing. Ignasiak remembered that Judge Collier told him that a lawyer could be assigned if he could not afford one. He did not recall Adkinson providing him basic information about his appellate rights after sentencing, such as that he could not challenge his sentence later if he did not appeal, or that he could get a copy of the transcripts to assist with the appeal, or that an appeal would not violate the

---

[6] In light of the limited scope of this recommendation, the court will summarize only the testimony pertinent to the claim regarding Ignasiak's desire to appeal.

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

terms of his plea agreement, including with respect to, for example, the non-prosecution of his family members or others in relation to his failure to appear for trial.    Mr. Johnson asked Ignasiak if his lawyer had told him that if he did not appeal he would be barred from doing so later, and Ignasiak vehemently responded "I told him I wanted an appeal."

The attorneys' questions focused largely on the issues underlying Ground One of Ignasiak's motion, the alleged involuntariness of his plea, not the instant claim. Therefore, after counsel completed questioning, the court asked Ignasiak to provide more information about the events giving rise to his allegation concerning counsel's failure to file an appeal.    Ignasiak was unable to offer much detail about the small room in which he and counsel met, but he remembered being stunned after sentencing, and telling counsel that he wanted to appeal both the conviction and the sentence.    Ignasiak testified that he had no doubt that counsel heard him, acknowledged what he said, and said he would do it.    Ignasiak did not realize that an appeal had not been filed until after he was at Coleman.    He said that he saw Mr. Adkinson a couple more times about his divorce but did not write to inquire about the status of his appeal.

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

Clay Adkinson, Esq., testified that he has been an attorney since 2006, with criminal law comprising the majority of his practice.   He testified that he has known members of Ignasiak's family his whole life, and his initial contact with Ignasiak was when Adkinson offered to represent Ignasiak on appeal after his trial. As previously noted, Ignasiak retained other counsel for that appeal.   Adkinson represented Ignasiak in the civil forfeiture proceedings related to the original criminal convictions, after the trial jury did not act on the criminal forfeiture.   After Ignasiak absconded to avoid the proceedings currently at issue, his former attorneys no longer wanted to represent him, and Adkinson was hired to retry the case.

Counsel testified about discussions he had had with Ignasiak about an appeal. First, he stated that they had talked about the initial appeal for which he was not retained.   Next, he related that they had a conversation after Ignasiak's plea and the completion of the PSR but before sentencing.   Ignaskiak reportedly did not believe he was going to get a fair sentence, and he expressed some concern about a vindictive sentence, presumably in light of the previous successful appeal.   Adkinson testified that he told Ignasiak it was premature to discuss an appeal at that point and they needed to wait to see what happened at sentencing.

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

Counsel stated either that he did not recall his client asking him to file an appeal after sentencing or that Ignasiak never instructed him to do so.   If he had, counsel said he would have filed the appeal.   Adkinson testified that he recalled meeting with his client after the sentencing proceeding in what he described as a little alcove outside the courtroom, although he later expressed some confusion and thought this meeting in the alcove might have occurred after the plea.   Adkinson testified that he had two sentencing proceedings on the day of Ignasiak's sentencing, and that Judge Collier had asked him to come to chambers to meet with him after court.   Although he did meet with Ignasiak at some point after Ignasiak had been sentenced, counsel testified that he did not recall there being any discussion of particular appellate issues.

On cross-examination, counsel again stated he did not recall discussion of Ignasiak's right to appeal following sentencing.   Nonetheless, when asked if it was his duty to discuss with his client the right to appeal his conviction, Adkinson responded "Absolutely."

Defense counsel, Mr. Johnson, asked Adkinson whether he believed that the drug quantity would have been an issue that was either meritorious or worth raising

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

on appeal.    Adkinson responded that it could have been raised in good faith, although in his opinion it would not have been successful.

Adkinson maintained that he never would have discouraged Ignasiak from pursuing an appeal if he wished to do so.    He again stated that he recalled that Ignasiak had never asked him to file an appeal, although they had spoken within the time frame for filing an appeal.    From counsel's testimony it almost appeared that he felt it was incumbent upon Ignasiak to initiate a conversation and request that counsel file an appeal, rather than it being incumbent upon Adkinson to advise his client with respect to the advantages and disadvantages of an appeal and ascertain Ignasiak's wishes in this regard.

In response to a question from the court, Adkinson clarified that there was only one point at which an appeal was discussed following Ignasiak's sentencing, and it was <u>not</u> at the courthouse.    Instead, Adkinson was now sure that this discussion occurred at the county jail when Atkinson was at the jail to see another inmate, and then stopped in to see Ignasiak.    During the conversation they talked about where Ignasiak was going to be placed.    It was then that counsel recalled Ignasiak saying words to the effect that he felt like an appeal would do him no good

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

and he was not going to get justice.    Counsel said he knew that Ignasiak's family was going to pursue executive clemency or a pardon with then-president Obama.

Conclusion

Ignasiak claims that counsel both failed to consult with him regarding the advantages and disadvantages of filing an appeal, and that counsel disregarded a specific request that he file an appeal.    The written record and the testimony adduced at the hearing support Ignasiak's position in both respects.

The lack of consultation is indisputable.    Despite the myriad discussions prior to sentencing about possible appellate issues, which counsel deemed to be premature, and which were in fact premature, there is no record evidence that counsel consulted meaningfully with Ignasiak after sentencing with respect to his right to appeal.    Counsel never testified that he discussed the advantages and disadvantages of filing an appeal or definitively ascertained his client's wishes, even though he conceded there was at least one non-frivolous ground for appeal.    Under the circumstances of this case, the court finds that counsel's lack of consultation was constitutionally insufficient.    *Flores-Ortega*, 528 U.S. at 480.    Ignasiak is entitled to an out-of-time appeal.

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

Furthermore, although it is a closer question, based on its observation of the witnesses' demeanor and live testimony at the evidentiary hearing, the court finds that it is more likely than not that Ignasiak requested that Adkinson file an appeal immediately after sentencing.    Ignasiak's testimony on this issue was more definitive and more consistent.    When Mr. Johnson asked Ignasiak at the hearing if he would have appealed had known he would be forever foreclosed from challenging his sentence, Ignasiak's response was a forceful "I told him I wanted an appeal." Counsel's testimony was somewhat more equivocal.    He testified that he did not recall his client asking him about an appeal, but he apparently neither directly asked what Ignasiak wanted to do nor sent a follow-up letter of any kind memorializing what he may have believed to be Ignasiak's position.    Counsel testified that he had more than one sentencing proceeding that day, as well as a meeting with Judge Collier in chambers following the proceedings.    Thus, it is not outside the realm of possibilities that he either did not hear Ignasiak's request, that he did not recall Ignasiak's request, or—conceivably anyway—that he misconstrued Ignasiak's comments as bluster or venting about the unfairness of the judicial system.

The presence of a non-frivolous appellate issue is neither necessary nor dispositive.    However, it can be instructive when a court is tasked with weighing

credibility.    In this case, Ignasiak was sentenced to the statutory maximum term of imprisonment in each of his criminal cases.    He had expressed dissatisfaction with the proceedings generally, as well as his sentence.    Specifically, he believed that the quantity of drugs attributed to him was excessive and erroneous.    In his view, the Government had held him criminally accountable for every opiate prescription he had written during the time period in question, including—again, in his opinion—those that were medically necessary.    Moreover, in light of counsel's objections, the drug quantity issue appeared to have been preserved for appellate review.    It thus appears, and even Mr. Adkinson admitted as much, that an attorney pursuing an appeal on Ignasiak's behalf could have pursued in good faith an appeal challenging—if nothing else—the drug quantity calculations and corresponding sentence.[7]    In light of the foregoing, the court concludes that counsel did not file the appeal as requested, and that this omission was constitutionally deficient.    *Roe v. Flores Ortega*, 528 U.S. at 477.

---

[7] The court recognizes that the district court said it would have imposed the same sentence regardless of counsel's objections (ECF No. 430 at 55).  However, after observing Ignasiak's demeanor at the evidentiary hearing, the undersigned does not believe this would have dissuaded him from pursuing an appeal.

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

The Eleventh Circuit has stated that the proper procedure when an out-of-time appeal is warranted is:   (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be re-imposed; (3) upon re-imposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is fourteen days, which is dictated by Federal Rule of Appellate Procedure 4(b)(1)(A)(i).   *United States v. Parrish*, 427 F.3d 1345, 1347 (11th Cir. 2005) (quoting *United States v. Phillips*, 225 F.3d 1198, 1201 (11th Cir. 2000)); *United States v. Palacios*, 516 F. App'x 734 (11th Cir. 2013).

Defendant's remaining claims should be dismissed without prejudice to their reassertion, if appropriate, upon conclusion of his direct appeal.   *See McIver*, 307 F.3d at 1331 n.2 ("We think the best approach is to dismiss without . . . the resolution of remaining collateral claims pending the direct appeal.   There are significant inefficiencies to any other approach.").   "'[A]n order granting a § 2255 petition, and reimposing sentence, will reset to zero the counter of collateral attacks pursued and will not render subsequent collateral proceedings 'second or successive.'"   *Id.*,

307 F.3d at 1332 (quoting *Shepeck v. United States*, 150 F.3d 800, 801 (7th Cir. 1998)).

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The motion to vacate, set aside, or correct sentence (ECF No. 424) be **GRANTED** with respect to Ground Two of Ignasiak's motion, and that the remaining claims, Grounds One and Three, be **DISMISSED without prejudice**.

2.      Ignasiak's criminal judgment be vacated and the same sentence re-imposed.

3.      Counsel be appointed for the purpose of appeal (or, at minimum, to consult with Ignasiak with respect to his desire to appeal).

At Pensacola, Florida, this 13<u>th</u> day of November 2017.


<u>/s/ *Elizabeth M. Timothy*_____</u>
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and**

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT

**recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Criminal Case Nos.: 3:08cr27/LAC/EMT; 3:13cr95/LAC/EMT