UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                              Case Nos.: 3:08cr27/LAC/MAL
                                                            3:21cv322/LAC/MAL

ROBERT L. IGNASIAK, JR.,
     Defendant.

---

## REPORT AND RECOMMENDATION

This matter is before me on Defendant's counseled Amended Motion to
Vacate Sentence Under 28 U.S.C. § 2255.[1] ECF No. 537. The Government
responded in opposition (ECF No. 538) and Defendant filed a reply (ECF No. 541).

After careful consideration of the motion, the Government's response,
Defendant's reply, the record and the relevant law, I recommend the § 2255 motion
be denied without an evidentiary hearing because Defendant's first two claims are
without merit and his third claim is procedurally defaulted. *See* Rules Governing
Section 2255 Cases 8(a) and (b).

---

[1] The case was referred to the undersigned for the issuance of all preliminary orders and any
recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R.
72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).

## I.     BACKGROUND

A. <u>First Trial and Appeal</u>

This case has a lengthy procedural history. The story began on February 19, 2008, when a federal grand jury in the Northern District of Florida charged Defendant Robert L. Ignasiak, Jr., a former licensed physician, with fourteen counts of healthcare fraud (Counts One through Fourteen) and forty counts of illegally prescribing controlled substances in violation of 21 U.S.C. § 841(a) on dates certain (Counts Fifteen through Fifty-Four), two of which resulted in death (Counts Twenty-Eight and Forty-Eight). ECF No. 3. After a nineteen-day trial in October and November of 2008, at which Ignasiak was represented by attorneys Roy Black, Jackie Perczek, Barry Beroset and Mark Seiden, a jury found Ignasiak guilty of twelve counts of healthcare fraud and thirty-one counts of illegal prescribing, including Counts Twenty-Eight and Forty-Eight. ECF No. 187. The jury found him not guilty of the remaining eleven counts. ECF No. 189. In January of 2009, the court sentenced Ignasiak to a total of 292 months' imprisonment. ECF Nos. 208, 212, 248, 259. The court also imposed a fine of $1,000,000 that was later reduced to $250,000. ECF Nos. 259, 267.

Ignasiak appealed the judgment and sentence, as well as the denial of two other post-conviction motions. *See* ECF Nos. 210, 283, 313. He raised multiple claims for relief. The Eleventh Circuit found one of the claims to be dispositive and require reversal, without addressing the remaining claims. ECF No. 330.[2] On January 19, 2012, the Eleventh Circuit held the district court's admission of autopsy reports and testimony about those reports "without live in-court testimony from the medical examiners who actually performed the autopsies (and where no evidence was presented to show that the coroners who performed the autopsies were unavailable) . . . violated the Confrontation Clause." *Id.* at 4-5. It also held that potential impeachment information related to the Government's expert witness must be unsealed. *Id.* at 44–49. The appellate court reversed Ignasiak's convictions and remanded the case for further proceedings.

On April 19, 2012, the Eleventh Circuit granted Ignasiak's unopposed motion for bond pending appeal (ECF No. 339), after the district court had denied his request seeking the same (*see* ECF No. 337).

---

[2] The published opinion is found at *United States v. Ignasiak*, 667 F.3d 1217 (11th Cir. 2012).

B. Criminal Proceedings after Remand

Ignasiak's case was set for re-trial on August 6, 2012, and then postponed until December 3, 2012, after he retained new counsel, attorney Clay Adkinson. ECF Nos. 350, 358, 367. On November 6, 2012, however, the district court issued a warrant for Ignasiak's arrest after learning he violated his pretrial release by disappearing from his legal residence. ECF No. 392. The Presentence Investigation Report ("PSR") reflects Ignasiak faked his own suicide, absconded from pretrial supervision, and fled the jurisdiction. ECF No. 415, PSR ¶ 55.

In September of 2013, Ignasiak was located and arrested in the Southern District of Florida. ECF Nos. 397, 398. He was returned to this district where he entered a plea of guilty, still represented by Mr. Adkinson. ECF Nos. 407–410. Ignasiak pleaded guilty to all the remanded counts in the 2008 case except the two counts involving deaths, Counts Twenty-Eight and Forty-Eight, which the Government dismissed in exchange for Ignasiak's plea. As additional consideration, the Government agreed (1) not to file further criminal charges against him, (2) to move to dismiss the remaining counts at sentencing, and (3) not to file charges against any other person for crimes related to Ignasiak's failure to appear. ECF No. 408 at 1, 3–4. The Government explained at Ignasiak's rearraignment that it had

probable cause to believe another person or persons had assisted Ignasiak in his escape, harbored him after the escape, and obstructed justice or the investigation into his disappearance.[3] ECF No. 431 at 16. The Government further stated its belief that "it is appropriate and acceptable for Defendant to plead guilty to an agreement that has as a condition the Government's agreement not to prosecute a third party." *Id.* at 17. It assured the court that as of Ignasiak's entering the plea, the investigation into any third-party's wrongdoing would be closed. *Id.* During the proceeding, Ignasiak twice stated he would "do anything to protect [his] family," thus tacitly acknowledging his belief that at least one family member had committed a crime related to his flight to avoid prosecution. *Id.* at 17, 18. Ignasiak simultaneously entered a plea of guilty in Case No. 3:13cr95 to a single count of failure to appear for trial.

On January 14, 2014, after a contested hearing, the court sentenced Ignasiak to a total term of 360 months' imprisonment. The sentence was comprised of 240 months in this case followed by a consecutive 120-month sentence in Case No. 3:13cr95. *See* ECF No. 418; ECF No. 430 at 54. The court specifically noted on the

---

[3] In an affidavit in support of his first § 2255 motion, Ignasiak identified the individuals in question as his wife, son and sister. ECF No. 424 at 47. He claimed, "there is no way [he] would have pleaded guilty to the charges had it not been for the Government's threat to hurt [his] family." *Id.* at 48.

record "the same sentence would be imposed, irrespective of my findings as to any objection or argument that has been raised here today by counsel." ECF No. 430 at 55. The court advised Ignasiak an appeal had to be filed within fourteen days, he had the right to be represented by an attorney on appeal, and if he could not afford counsel, an attorney would be appointed for the purposes of an appeal "upon [his] petition to the Court." *Id.* at 58. The Second Amended Judgment was entered on January 31, 2014. ECF No. 418.

C. First § 2255 Motion, Resulting in Belated Direct Appeal

In February of 2015, Ignasiak timely filed a pro se § 2255 motion contending his guilty plea was involuntary, counsel failed to appeal the Second Amended Judgement as requested, and counsel failed to preserve the district court's alleged error in its drug quantity calculation for appellate review. ECF No. 424. After an evidentiary hearing at which Ignasiak was represented by appointed counsel Ron Johnson, the court granted Ignasiak's motion as to his claim that counsel failed to file an appeal and dismissed his remaining two claims without prejudice. ECF Nos. 452, 458. The Court entered a Third Amended Judgment (ECF No. 459), and attorney Johnson filed a notice of appeal in Ignasiak's behalf before moving to withdraw. ECF Nos. 460-462. Shortly thereafter, Ignasiak filed a "Notice of Intent

to Proceed Pro Se on Appeal," in which he expressly requested that counsel not be appointed in his behalf. ECF No. 466.

On appeal, (which, to be clear, was Ignasiak's direct appeal after his guilty plea), he argued the district court erred (1) in accepting his guilty plea because it was unknowing and involuntary because it was "insincere;" (2) in allowing his re-prosecution; and (3) in its assessment of the drug weight for which he was responsible and in its application of the Sentencing Guidelines. ECF No. 489 at 4-5. On March 30, 2020, the Eleventh Circuit found no error and affirmed.

Ignasiak unsuccessfully moved for compassionate release, based on the Covid-19 pandemic. ECF No. 491, 507. The Eleventh Circuit affirmed the district court's decision on July 14, 2021. ECF No. 521.

D. The Current § 2255 Motion

In February of 2021, while the appeal of the denial of his compassionate release motion was pending, Ignasiak timely filed a pro se motion under 28 U.S.C. § 2255 challenging the Third Amended Judgment entered in 2018. ECF No. 513. He raised two claims of ineffective assistance of counsel. ECF No. 513. Ignasiak subsequently filed a counseled amended § 2255 motion on August 17, 2022, raising a total of three claims, which is the operative pleading before the Court. ECF No.

537. He repeated the two claims of ineffective assistance of counsel raised in his original pro se motion and added a claim based on a new Supreme Court decision. The Government responded in opposition to the amended motion and Ignasiak filed a reply. ECF Nos. 538, 541.

II.    **DISCUSSION**

A. General Standard of Review for §2255 Motions

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014). A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a).

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's

unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001); *see also Beeman v. United States,* 899 F. 3d 1218, 1218 (11th Cir. 2018). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697.

*Strickland*'s two-part test also applies to guilty pleas. *Carmichael v. United States,* 966 F.3d 1250, 1258 (11th Cir. 2020); *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012). A defendant who claims that ineffective assistance of counsel led him to improvidently plead guilty will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. *Lafler*, 566 U.S. at 163 (quoting *Hill*, 474 U.S. at 59).

In determining whether counsel's conduct was deficient, this court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Counsel's performance must be

evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Hollis v. United States*, 958 F. 3d 1120, 1122 (11th Cir. 2020) (citation omitted). An attorney's performance will not be found constitutionally deficient for failing to preserve or argue a meritless claim. *Id.* at 1124.

To establish the second prong, prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Jenkins v. Comm'r, Ala. Dep't of Corr.,* 963 F. 3d 1248, 1270 (11th Cir. 2020).

### B. Grounds One and Two: Failure to advise Ignasiak of the elements of the § 1347 and § 841 offenses

In his first two grounds for relief, Ignasiak claims attorney Adkinson's performance was constitutionally deficient because counsel failed to advise him of the elements necessary for the Government to obtain a conviction under both § 1347 and § 841, respectively. In Ground One, Ignasiak contends counsel did not inform him it was the Government's burden to prove claims submitted to Medicaid and Blue Cross were false to establish a violation of § 1347. ECF No. 537 at 8. In Ground

Two, Ignasiak contends counsel failed to advise him the Government bears the burden of proving he unlawfully dispensed controlled substances. *Id.* at 10. In support of these claims, Ignasiak has submitted a handwritten affidavit. ECF No. 537-1. Ignasiak denies any intent to defraud and avers that had counsel accurately advised him, he would not have pleaded guilty but would have proceeded to trial, because he had a "license to prescribe controlled substances," and the office visits forming the basis of Counts 1 through 14 of the indictment were necessary, as were the prescriptions written at these visits. *Id.* at 1, 2.

The fact that Ignasiak had gone through an entire prior trial makes incredible his claim he did not know the elements of the crimes and that he was unaware of the Government's burden to prove them. Nevertheless, a review of the record shows that Ignasiak was correctly advised of the elements of each offense under the law that applied on October 29, 2013, when he entered his guilty plea. The Statement of Facts, which Ignasiak averred he had read carefully with counsel, listed the elements of the offenses the Government would be required to prove beyond a reasonable doubt. The elements of the § 1347 offenses were listed as follows:

> --The Defendant executed or attempted to execute a scheme to defraud a health care benefit program or to obtain money or property from a health care benefit program by means of false or fraudulent

pretenses, representations, or promises relating to a material fact as charged;

--The Defendant did so willfully with an intent to defraud;

--The false or fraudulent pretenses, representations or promises were material; and

--The scheme to defraud or to obtain money or property was in connection with the delivery of, or payment for health care benefits, items, or services.

ECF No. 407 at 7. These elements directly refute Ignasiak's claim that attorney Adkinson failed to inform him of the Government's burden of proving that the claims he submitted to Medicaid and Blue Cross were false.

The two listed elements of the § 841(a)(1) offense were:

 --The Defendant distributed or dispensed, or caused to be distributed or dispensed, the controlled substance, as charged; and

--the Defendant did so knowingly and intentionally.

*Id.* Because these elements were correct at the time Ignasiak entered his plea, Ignasiak cannot show deficient performance on the part of attorney Adkinson.

Ignasiak contends, however, that attorney Adkinson failed to advise him of the Government's burden to prove that he "unlawfully" dispensed controlled substances. ECF No. 537 at 10. It is unclear exactly what Ignasiak means by "unlawfully." At his prior trial, the court gave a detailed instruction regarding the

Government's burden when a medical doctor or physician is charged with violations of § 841. ECF No. 185 at 16-18. Attorney Adkinson was aware of the instruction given at the first trial and tried to alter it more to Ignasiak's favor. See ECF No. 372, Supplemental Memorandum Regarding Appropriate Standard of Care to Be Applied.

To the extent Ignasiak implies that attorney Adkinson was ineffective for failing to predict the United States Supreme Court's June 2022 ruling in *Ruan*[4], his claim must fail. The Eleventh Circuit has "a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (Carnes, J., concurring) (collecting cases); *Pineda v. Warden, Calhoun State Prison*, 802 F. 3d 1198, 1204 (11th Cir. 2015) (counsel not ineffective for failing to anticipate Supreme Court's clarification of the law); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *United States v. Finley*, 805 F. App'x 823, 826-27 (11th Cir. 2020).

---

[4] In the case of a medical professional who is authorized to prescribe controlled substances, *Ruan* held that the Government must prove the individual knowingly or intentionally dispensed a controlled substance and knowingly or intentionally did so in an unauthorized manner. *Ruan v. United States*, 597 U.S.450 (2022).

Based on the foregoing, I find Ignasiak's after-the-fact conclusory assertions do not overcome his sworn statements at his rearraignment that he reviewed the Statement of Facts, which contained the elements of the crimes, with his attorney prior to the plea hearing and he signed the document himself. Ignasiak has not shown he made an uninformed decision to enter his plea or that counsel's performance was constitutionally deficient.

The undersigned also notes that although neither party mentioned it in conjunction with the instant motion, Ignasiak made clear at the time he entered his plea that he was motivated by a strong desire to protect at least one family member from the consequences of unlawfully (albeit ultimately unsuccessfully) attempting to assist Ignasiak in evading prosecution. ECF No. 431 at 17, 18. Although not dispositive, the credibility of Ignasiak's after-the-fact assertion that he would have proceeded to trial, thus subjecting the individual or individuals to further investigation and prosecution for their actions, is suspect.

Finally, had Ignasiak proceeded to trial instead of entering a guilty plea, he would have again faced the two charges involving the death of former patients that were dismissed in consideration for his plea agreement. A jury had already found the evidence established his guilt beyond a reasonable doubt of these charges, and

Ignasiak has offered nothing suggesting a second jury would have found differently. Ignasiak's conviction was overturned due to a Confrontation Clause issue, but he has not suggested, much less offered persuasive evidence, that the result of a second trial under then-controlling law would have been different. Therefore, he has not established his entitlement to relief under the governing standard in *Strickland.*

C. Ground Three: Insufficient Factual Basis for Guilty Plea to § 841 Counts after *Ruan*

Ignasiak amended his § 2255 motion in August of 2022 to add a claim that there was an insufficient factual basis to support his guilty plea to the § 841 counts[5] under the Supreme Court's June 2022 decision in *Ruan v. United States,* 597 U.S. 450 (2022). Ignasiak maintains *Ruan*, although decided after his conviction, is retroactively applicable to cases on collateral review because it narrowed the scope of the criminal statute by expanding the *mens rea* requirement.

In *Ruan* the defendants were medical doctors accused of violating the Controlled Substances Act by dispensing certain Schedule II and III drugs outside the usual course of professional practice and without legitimate medical purpose, in violation of 21 U.S.C. § 841. Section 841 makes it unlawful "[e]xcept as

---

[5] Counts 15-54 of the Indictment charged violations of 21 U.S.C. § 841.

authorized[,] … for any person knowingly or intentionally… to manufacture, distribute, or dispense … a controlled substance." The Supreme Court held the "knowingly or intentionally" *mens rea* requirement applies also to the "except as authorized" clause, meaning "once a defendant meets the burden of producing evidence that his or her conduct was 'authorized,' the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." *Ruan*, 597 U.S. at 456, 468. Otherwise stated, in the case of a medical professional who is authorized to prescribe controlled substances, the Government must establish the individual knowingly or intentionally dispensed a controlled substance and knowingly or intentionally did so in an unauthorized manner. *See Ruan v. United States*, 56 F. 4th 1291, 1296 (11th Cir. 2023) (*Ruan II*), *cert. denied,* Case 22-1175, 2023 WL 7287134 (Nov. 6, 2023). The Government may meet its burden through direct or circumstantial evidence, measuring a defendant's actions against objective criteria such as that set forth in the regulation defining the scope of a doctor's prescribing authority in 21 C.F.R. § 1306.04(a). *Ruan*, 597 U.S. at 467.

At the time of the offense conduct, Ignasiak was a licensed physician authorized to dispense controlled substances. Therefore, to secure a conviction under

*Ruan,* the Government was required to prove he knowingly and intentionally acted in an unauthorized manner in dispensing the substances in question. *Ruan*, 597 U.S. at 467. Ignasiak maintains that the Statement of Facts, plea colloquy and sentencing transcript taken together "clearly establish that Mr. Ignasiak did not believe he was acting in an unauthorized manner." ECF No. 537 at 14. Rather he told the court he was "treating [his] patients to the best of [his] ability." *Id.* at 15. Ignasiak asserts that absent a valid factual basis establishing he knowingly and intentionally acted in an unauthorized manner, his § 841 convictions must be vacated and he must be permitted to withdraw his guilty plea.[6] *United States v. Pittman*, 850 F. App'x 703, 714 (11th Cir. 2021); *see also United States v. Duldulao*, 87 F. 4th 1239 (11th Cir. 2023).

    a. <u>Retroactivity</u>

Ignasiak maintains the *Ruan* decision is retroactive to cases on collateral review because it narrowed the scope of the criminal statute by interpreting the *mens rea* requirement of 21 U.S.C. § 841(a)(1) and narrowing the scope of the criminal

---

[6] Withdrawal of the plea would void the Government's consideration for the plea agreement. This would include both its promise not to prosecute anyone for his or her role in Ignasiak's attempt to evade prosecution, and the dismissal of Counts Twenty-Eight and Forty-Eight. *See United States v. Baggett*, 901 F. 2d 1546 (11th Cir. 1990) (holding that the double jeopardy clause does not prohibit trial on counts that were dismissed as a result of plea bargain after defendant was permitted to withdraw his guilty plea).

statute. The Government concurs and the case law supports a finding that *Ruan* announced a new rule of substantive law that would apply retroactively to both direct appeals and initial § 2255 motions. ECF No. 535 at 2 (citing *Whorton v. Bockting*, 549 U.S. 406, 416 (2007); *Seabrooks v. United States*, 32 F. 4th 1375, 1382-83 (11th Cir. 2022)); *see also Duldulao*, 87 F. 4th 1239; *cf In re Blanc*, No. 22-12527-F, 2022 U.S. App. LEXIS 24640, at *4 (11th Cir. Aug. 31, 2022) (denying an application for permission to file a second or successive § 2255 motion, holding "*Ruan* did not announce a new rule of constitutional law but, rather, clarified the *mens rea* that the government must prove to convict a defendant under § 841."). Accepting that *Ruan* is retroactive in this case, the Court must examine the issues of procedural bar or default.

b. Procedural Bar/Default

The Government contends that although Ignasiak's *Ruan* claim is properly before this Court on what is Ignasiak's initial § 2255 motion, the claim is procedurally defaulted because he did not raise this issue on appeal. ECF No. 538 at 11. In the same paragraph the Government also appears to argue Ignasiak's claim is subject to a procedural bar.[7]

---

[7] The Government states:

1. <u>Definitions</u>

The terms "procedurally barred" and "procedurally defaulted" are not synonymous. A procedural bar prevents a defendant from raising arguments in a § 2255 proceeding that were raised and rejected on direct appeal. *Seabrooks,* 32 F. 4th at 1383 (citing *Stoufflet v. United States,* 757 F.3d 1236, 1239 (11th Cir. 2014) (collecting cases)). A defendant can overcome a procedural bar if there is an intervening change in law. *Id.* (citing *Davis v. United States,* 417 U.S. 333, 342 (1974)).

Section 2255 motions are also subject to the doctrine of procedural default. *Granda v. United States*, 990 F.3d 1272, 1280 (11th Cir. 2021). A "procedural default" occurs when a defendant attempts to raise a new challenge to his conviction or sentence in a § 2255 motion that could have, but was not, been raised on appeal.

---

While the defendant raised issues regarding the knowing and voluntary nature of his guilty plea on direct appeal, he has never argued that the factual basis was insufficient nor that the government needed to establish that he knew he was illegally prescribing controlled substances without authorization prior to the instant amended § 2255 motion. Either way, the defendant is barred from bring (sic) a *Ruan*-based claim because he already argued (unsuccessfully) before the appellate court that his plea was made unknowingly and failed to otherwise argue that the elements of which he was advised in the "Statement of Facts" were not correct before either this Court or the appellate court.

ECF No. 538 at 11.

*Seabrooks*, 32 F. 4th at 1384 (citing *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004)). If a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is excused. *Id.* (citing *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011)). To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice, or actual innocence. *Id.*; *Granda*, 990 F.3d at 1286. The Government can waive the affirmative defense of procedural default. *Seabrooks,* 32 F. 4th at 1384 (citing *Foster v. United States*, 996 F. 3d 1100, 1106-07 (11th Cir. 2021)).

### 2.  Ignasiak's position with respect to previously raised claims

Ignasiak now claims he "argued in both his prior § 2255 motion and direct appeal that the Government was unable to prove all the essential elements required to convict him under 21 U.S.C. § 841(a)(1) and that the guilty plea was not supported by a factual basis." ECF No. 541 at 5. He notes he supported this position both in the prior § 2255 motion and on direct appeal by referencing the plea and sentencing colloquies where he asserted that he "diagnosed and prescribed medication to patients to the best of his ability," *Id.* at 6, arguably a contention that he did not knowingly or intentionally act in an unauthorized manner. Thus, he maintains,

"liberally construed, Ignasiak has raised a *Ruan*-like claim in prior proceedings that was adversely decided." *Id.* at 5.

 If the Court were to accept that argument, there could be no procedural bar, because Ignasiak raised the claim in question, and the intervening change in the law created by *Ruan* would excuse the procedural bar otherwise caused by the claim having been decided adversely to him. If he failed to raise the argument previously, it could be subject to a procedural default. Therefore, to determine whether Ignasiak's *Ruan* claim is either procedurally barred or procedurally defaulted, the Court must examine the claims he raised previously.

   3. <u>Claims raised on appeal</u>

 The issues Ignasiak raised before the Eleventh Circuit in his 2012 appeal are not relevant to the instant proceeding. The undersigned does note the Eleventh Circuit found the evidence presented at trial was sufficient to support his convictions, when viewed in the light most favorable to the Government. ECF No. 330 at 25-26.

 In his 2020 appeal, challenging his conviction after his guilty plea, Ignasiak raised the following claims: (1) his plea was involuntary because it was "insincere" and ambivalent; (2) his re-prosecution violated the Double Jeopardy Clause; and (3)

the district court erred in calculating the quantity of drugs for which he was responsible and incorrectly applied the Sentencing Guidelines. ECF No. 489 at 4-5. None of these claims raises the issue decided in *Ruan* or challenges the sufficiency of the evidence.

Although not a separately enumerated ground for relief, in his appeal Ignasiak also challenged the indictment on jurisdictional grounds, claiming the Tenth Amendment and *Gonzales v. Oregon*, 546 U.S. 243 (2006) barred the Government from enforcing the Controlled Substance Act (CSA) because "the regulation of the practice of medicine is a right reserved to states, not the federal Government." ECF No. 489 at 8. He also contended that the CSA "forbids the Attorney General or the courts from creating national standards for practicing medicine." *Id.* The Eleventh Circuit rejected this argument, noting the Supreme Court stated in *Gonzales* "there is no question that the Federal Government can set uniform national standards" of medical practice. *Id,* at 8, n.1 (quoting *Gonzales,* 546 U.S. at 271). The court also stated that in a prosecution under § 841, "the question is not whether a doctor's activities comported with a single national standard of medical practice but whether he 'dispensed [or distributed] controlled substances for other than legitimate medical purposes in the usual course of professional practice and that he did so knowingly

and intentionally." ECF No. 489 at 9-10 (citing *United States v. Joseph*, 709 F. 3d 1082, 1094 (11th Cir. 2013); 21 C.F.R. § 1306.04(a)). [8] The court noted the Government's burden of proof was to show a defendant's actions were "inconsistent with <u>any</u> accepted standard of professional practice." *Id.* at 10 (quoting *Joseph*, 709 F. 3d at 1095). It concluded in this case:

> [t]he government did just that. The indictment charged Ignasiak with prescribing large amounts of controlled substances outside the usual course of medical practice and for other than legitimate medical purposes. This language in the indictment tracks the CSA and does not suggest Ignasiak's conduct must be evaluated against a single national standard of medical practice.

*Id.* at 10, (citing *Joseph*, 709 F. 3d at 1094, 1103).

Thus the Eleventh Circuit rejected Ignasiak's Tenth Amendment argument. ECF No. 489 at 8-10. It did not address any argument regarding the factual basis supporting Ignasiak's guilty plea or the Government's burden of proof, presumably because it found no such argument was raised by Ignasiak. Therefore, the undersigned concludes Ignasiak did not raise his *Ruan* claim on appeal.

---

[8] *Joseph*, in turn, cited the Eleventh Circuit's opinion in Ignasiak's first appeal. *United States v. Ignasiak*, 667 F. 3d 1217, 1228 (11th Cir. 2012).

4.  Claims raised in § 2255 motion

As further proof of having raised the *Ruan* issue previously, in Ignasiak's reply he directs the Court's attention to issues raised in his first pro se § 2255 motion, filed in 2015 (ECF No. 424). ECF No. 541 at 2. In that motion, in addition to maintaining counsel was ineffective for failing to file a notice of appeal after his guilty plea, he argued, in relation to his guilty plea:

> Dr. Ignasiak was well aware that the Government's evidence was insufficient to prove all the essential elements of the charged offense. This, coupled with is belief that his standard of medical care was well within acceptable limits under the controlling Florida Standard, was a determining factor in his decision to seek vindication in trial by jury.

ECF No. 424 at 23. This claim was dismissed without prejudice when the court granted Ignasiak's § 2255 motion as to his claim that counsel was ineffective for failing to file a notice of appeal. Therefore, while it may have been raised, because it was not raised on the direct appeal, it was abandoned, and no decision was rendered.

Because it was not raised and adversely decided previously, Ignasiak's *Ruan* claim is subject to the doctrine of procedural default, which requires a showing of cause and prejudice to overcome, or, alternatively, actual innocence.

5.  <u>Cause and Prejudice</u>

With respect to the issue of cause, Ignasiak asserts "[o]f course [he] could not have made a claim pursuant to *Ruan* prior to the Supreme Court's decision." ECF No. 541 at 6. Actually, he could have. Futility is not cause for a failure to raise a claim. As the Supreme Court has stated: "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley v. United States*, 523 U.S. 614 623 (1998). Both doctor defendants in *Ruan* challenged the contrary law of the Tenth and Eleventh Circuits where they had been criminally charged, and they ultimately prevailed. Ignasiak could have done the same. *See Korcz v. United States*, Case 2:23-cv-08002, 2023 WL 2998483, *8 (N.D. Ala. Apr. 18, 2023) (rejecting § 2255 movant's argument that she could not have raised a *Ruan* argument on direct appeal before the case had been decided, analogizing *Ruan* to *Rehaif v. United States*, 139 S. Ct. 2191 (2019)).

In some jurisdictions or some situations, ineffective assistance of counsel may constitute "cause." However, Ignasiak represented himself on direct appeal, ECF No. 489 at 2, and therefore cannot claim ineffective assistance of appellate counsel for failing to raise the *Ruan* issue on direct appeal. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("[A] defendant who elects to represent himself cannot

thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"). Furthermore, the Eleventh Circuit has "a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (Carnes, J., concurring) (collecting cases); *Pineda v. Warden, Calhoun State Prison*, 802 F.3d 1198, 1204 (11th Cir. 2015) (counsel not ineffective for failing to anticipate Supreme Court's clarification of the law); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *United States v. Finley*, 805 F. App'x 823, 826-27 (11th Cir. 2020).

In addition to having no cause to excuse the procedural default, Ignasiak cannot show prejudice because there was a sufficient factual basis for his plea. "The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty." *United States v. Lopez*, 907 F.2d 1096, 1100 (11th Cir. 1990). "[U]ncontradicted evidence of guilt" is not required. *United States v. Owen*, 858 F.2d 1514, 1516-17 (11th Cir. 1988).

In the Statement of Facts accompanying his plea agreement, Ignasiak acknowledged that he "prescribed large quantities of controlled substances without

a legitimate medical purpose and outside the usual course of professional medical practice." ECF No. 407 at 1-2. Furthermore, the trial court was keenly aware of the circumstances of the case, having presided over a prior trial, hearing 16 days of testimony. *See* ECF No. 184, Criminal Minutes-Trial. The trial court had more than sufficient evidence from which it reasonably could find Ignasiak guilty even under the *Ruan* standard.

6. Actual Innocence

Having failed to show cause and prejudice to excuse his procedural default of his *Ruan* claim, Ignasiak's procedural default can be excused only if he demonstrates his actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id*. To show actual innocence of the offense of conviction, a movant "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

The record does not support a finding of actual innocence. The Government "can prove knowledge of a lack of authorization through circumstantial evidence." *See Ruan*, 142 S.Ct. at 2382. Had the case gone to trial a second time, each side could have presented testimony from medical experts about Ignasiak's prescribing

practices for the jury's consideration. *See Duldulao*, 87 F. 4th at 1270 (citing *United States v. Azmat*, 805 F. 3d 1018, 1036, 1042-44, 1049 (11th Cir. 2015)). There is already record evidence of the lack of authorization in this case.

In Ignasiak's 2020 appeal, the Eleventh Circuit noted the "record showed that Ignasiak had over 3,000 patients, 95% of whom were prescribed drugs beyond the usual course of professional practice." ECF No. 489 at 15.[9] This alone is circumstantial evidence of knowledge of a lack of authorization.

Furthermore, Ignasiak specifically admitted in the Statement of Facts to prescribing large quantities of controlled substances without a legitimate medical purpose and outside the usual course of professional medical practice. ECF No. 407 at 1-2. He also admitted to continuing to proscribe controlled substances after being made aware that patients were addicted to or abusing the substances he prescribed. *Id.* at 2-3. According to the Statement of Facts, some information Ignasiak received from other health care providers, regulatory agencies, insurance companies and patients' family members included that:

> --The subject patients were stealing drugs;
> --The subject patients were not taking the drugs as prescribed;

---

[9] Nonetheless, the "total drug weight for which Ignasiak was prosecuted was based on the prescriptions from only 55 of his patients—roughly 2% of the total patients." ECF No. 489 at 15.

--The subject patients were selling or diverting the drugs he had prescribed;

--The subject patients were traveling long distances, bypassing other health care providers, to go to Ignasiak's clinic;

--The subject patients sought early refills of controlled substances;

--The subject patients had forged prescriptions or engage in other criminal behavior related to controlled substance use

ECF No. 407 at 2-3.

Finally, he admitted that evidence existed showing his prescribing practices to certain patients "was outside the usual course of a legitimate medical practice."

*Id.* at 3. Some examples to which he admitted in the Statement of Facts were:

--Failure to obtain the subject patients' prior medical records;

--Failure to obtain a sufficient medical history;

--Increasing dosages of controlled substances without clinical indication;

--A pattern of writing similar prescriptions and for different patients' indicating that there was not a logical relationship between the drugs prescribed and the treatment of the condition;

--Failure to medically address the subject patients' abuse and misuse of controlled substances.

*Id.* at 3-4.

Based on these admissions, Ignasiak has not shown actual innocence that would excuse his procedural default of his *Ruan* claim.

## III.   CONCLUSION

An evidentiary hearing is not necessary to resolve Ignasiak's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); . For the foregoing reasons, the court finds Ignasiak has not shown that he is entitled to relief on either his first two grounds for relief or his procedurally defaulted *Ruan* claim. Therefore, his amended motion should be denied in its entirety.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84

(2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The amended Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 537) be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Gainesville Florida on February 15, 2024.


s/ *Midori A. Lowry*
**MIDORI A. LOWRY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.